J-A24020-18; J-A24021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.E.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.A.U., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 576 MDA 2018 |

Appeal from the Decree April 3, 2018
In the Court of Common Pleas of Columbia County Orphans' Court at
No(s):  233-OC-2017,
CP-19-DP-0000037-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: D.J.U., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.A.U., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 577 MDA 2018 |

Appeal from the Decree Entered April 3, 2018
In the Court of Common Pleas of Columbia County Orphans' Court at
No(s):  232-OC of 2017,
CP-19-DP-0000056-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: F.L.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.A.U., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 578 MDA 2018 |

Appeal from the Decree Entered April 3, 2018
In the Court of Common Pleas of Columbia County Juvenile Division at
No(s):  231-OC-2017,

CP-19-DP-0000057-2015

IN THE INTEREST OF: R.E.M., A MINOR

APPEAL OF: S.L.M., JR., FATHER

: IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
:
:
:
:
:
: No. 614 MDA 2018

Appeal from the Decree Entered April 3, 2018
In the Court of Common Pleas of Columbia County Orphans' Court at
No(s):  233-OC-2017,
CP-19-DP-0000037-2016

IN THE INTEREST OF: D.J.U., A MINOR

APPEAL OF: S.L.M., JR., FATHER

: IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
:
:
:
:
:
: No. 615 MDA 2018

Appeal from the Decree Entered April 3, 2018
In the Court of Common Pleas of Columbia County Orphans' Court at
No(s):  2017-OC-0000232,
CP-19-DP-0000056-2015

IN THE INTEREST OF: F.L.M., A MINOR

APPEAL OF: S.L.M., JR., FATHER

: IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
:
:
:
:
:
: No. 616 MDA 2018

Appeal from the Decree Entered April 3, 2018

J-A24020-18; J-A24021-18

In the Court of Common Pleas of Columbia County Juvenile Division at No(s): 231-OC-2017, CP-19-DP-0000057-2015

BEFORE: OTT, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:            **FILED DECEMBER 07, 2018**

B.A.U. ("Mother") and S.L.M. ("Father") appeal from the orders terminating their parental rights.[1] We find the trial court did not abuse its discretion and affirm the orders.

Mother and Father have three minor children, D.J.U., born June 2013, F.L.M., born March 2015, and R.E.M., born June 2016 (collectively, "Children"). In August 2015, Columbia County Children and Youth Services ("CYS") received a referral based on lack of cleanliness at the residence and lack of cleanliness and hygiene of Children. In October 2015, the court found D.J.U. and F.L.M. dependent. The court found R.E.M. dependent after his birth. A Service Plan was created, which included the following goals: Meet the basic needs of Children, obtain medical assistance for Children; improve parenting skills; improve home conditions; improve Children's hygiene; utilize local resources; and comply with medical and behavioral appointments for Children and for Mother and Father. N.T., 4/1/18, at 8-20; Exh. CYS-B. On November 17, 2017, CYS filed petitions for involuntary termination of Mother and Father's parental rights to Children.

_____

[1] Mother and Father each filed separate notices of appeal for each child. We have consolidated the six appeals *sua sponte*.

- 3 -

In July 2016, Father moved to Arkansas, and Mother followed in August 2016. *Id.* at 25. At the hearing on the petitions, Kerri Shaylor, a CYS caseworker, testified that Mother and Father remained in Arkansas and have not seen Children since they moved. N.T., 4/18/18, at 25-26. Mother has weekly phone calls with Children. *Id.* at 26. Father attends the phone calls less regularly. Mother and Father sent a gift card for Christmas and birthday cards. *Id.* at 26-27. Ms. Shaylor testified that Mother and Father completed parenting classes, but failed to complete the remaining goals. *Id.* at 8-20. Ms. Shaylor stated that she did not facilitate use of Skype for the phone calls, and noted Mother and Father only requested the use of video calls "a couple months ago." *Id.* at 44-45.

CYS did not send a request to Arkansas under the Interstate Compact on the Placement of Children ("ICPC")[2] seeking approval to send Children to Arkansas until May 2017. *Id.* at 28. Ms. Shaylor delayed sending the request

---

[2] The ICPC has been described as:

> As drafted, the [ICPC] provides for notification of appropriate state or local authorities in the receiving state before placement by out-of-state persons and agencies. The authorities in the receiving state are given the opportunity to investigate and, if satisfied, must notify the sending state that the proposed placement does not appear to be contrary to the child's best interest. After a placement has been made, the sending state continues to have financial responsibility for support and retains jurisdiction over the child.

*McComb v. Wambaugh*, 934 F.2d 474, 479–480 (3d Cir. 1991) (alteration in original); 62 P.S. § 761; 55 Pa. Code § 3130.41.

because Mother and Father did not have appropriate housing and she did not want Arkansas to deny the ICPC request. *Id.* at 47. Arkansas denied the first request because Mother and Father did not complete the paperwork required for the home study process. *Id.* at 28-29. CYS sent a second request in October 2017. *Id.* at 29. The process had not been completed at the time of the hearing due to Mother and Father's "lack of compliance." *Id.* at 31. Mother and Father missed two fingerprint appointments, did not return the paperwork to Arkansas in a timely manner, and were not following through with the process. *Id.* Ms. Shaylor stated CYS does not know whether the home in Arkansas was appropriate. *Id.*

Ms. Shaylor stated she had not "personally" completed an ICPC request in other cases, but CYS had, and noted she had done one prior request. *Id.* at 50-51. Further, she testified that she was trained on how to make a request, and, when a parent moved, she copied the file and her supervisor completed the paperwork. *Id.* at 51.

Ms. Shaylor further testified that Children appear happy in the foster home, were clean and well-dressed, and their basic, physical, and emotional needs were met. *Id.* at 33.

Mother testified that she speaks with Children by phone once a week, and that the foster parents denied her request to have video calls. *Id.* at 68-69. She stated that she and Father obtained housing in Arkansas in December 2016. *Id.* at 71. Mother claimed that they did not receive the paperwork for the first ICPC request in May 2017. *Id.* at 73. Mother stated that she moved

to Arkansas because she was told "Arkansas would be a better place for" her and Children and she and Father were "tired of getting messed with" by the caseworkers. *Id.* at 74, 90, 92. Mother's father, step-mother, grandmother, and two sisters live in Berwick, Pennsylvania, and she has no relatives in Arkansas. *Id.* at 89.

Father testified that they fixed the concerns regarding the home in Pennsylvania. *Id.* at 95-97. He and Mother moved to Arkansas because CYS "wanted to run us around" and he was told that in Arkansas "they won't run me around like they did up there." *Id.* at 97-98. He attends phone calls when able, based on his work and school schedule. *Id.* at 98. He and Mother only received paperwork for the ICPC request in October 2017. *Id.* at 101. Father's grandmother, great-uncle, ex-wife, and seven-year-old daughter live in Arkansas. *Id.* at 113. Father's mother, father and sister live in Pennsylvania. *Id.* at 113.

The trial court granted the termination petitions. It found termination proper under 23 Pa.C.S.A. § 2511(a)(1), (5), (8),[3] and (b). Specifically as to Subsection 2511(a)(1), the court found that "by conduct continuing for a period of at least six months immediately preceding the filing of the petition," Mother and Father "have evidenced a settled purpose of relinquishing parental claim to [Children] and have refused and failed to perform parental duties."

_____

[3] The trial court's opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) also cites the text of section 2511(a)(2). The petitions for termination filed by CYS, however, sought termination under Subsections 2511(a)(1), (5), and (8).

- 6 -

*Id.* at 117-18. The court found "the services or assistance readily available to the parents are not likely to remedy the conditions which led to the removal or placement of [Children] within a reasonable period of time." *Id.* at 118.

The trial court further found that termination would "best serve the developmental, physical, and emotional needs and welfare of" Children. *Id.* at 118-19. The court noted that Children, who were young, have had only phone contact with parents for almost two years, and that it would be "remiss if the Court would send the children . . . back to a place where they know nobody," noting they did not "even know [Mother and Father] at this point." *Id.* at 119.

The trial court further found CYS delayed initiating the ICPC request because "parents had no stable living arrangements," and Arkansas denied the request to assist because Mother and Father did not complete the required paperwork. Trial Court Opinion, filed May 24, 2018, at 4. The trial court found the delay in processing the request "was due to Mother and Father's lack of and/or slow compliance with paperwork, fingerprints, etc." *Id.*

The trial court further found that CYS proceeded reasonably under the Interstate Compact, that it made reasonable efforts to assist Mother and Father, and that Mother and Father intentionally left Pennsylvania because they wanted "to terminate their involvement with [CYS]." *Id.* In addition, the trial court found Children were doing well, were with foster parents who hoped to adopt Children, and Children were "healthy, happy, and maturing age appropriately." *Id.*

Mother and Father filed timely notices of appeal. They raise the following issues on appeal:

> 1. Whether the trial court erred in determining that [CYS] presented clear and convincing evidence that grounds for involuntary termination exist.
>
> 2. Whether the trial court abused its discretion when granting [CYS's] Petition for Involuntary Termination of Parental Rights when [CYS] failed to provide reasonable efforts to aid the family in reunification.
>
> 3. Whether the trial court abused its discretion and [committed an] error of law when it determined parents displayed a settled purpose to relinquish their rights by moving to Arkansas.
>
> 4. Whether the trial court abused its discretion and committed an error of law when it ignored the fact that [CYS] failed to submit a timely referral to the Interstate Compact on the Placement of Children knowing parents had relocated to Arkansas.

Mother's and Father's Br. at 5-6. We will address these claims together.

Mother and Father argue they failed to meet their goals because CYS did not make a timely ICPC request. They argue the trial court ignored this failure, as well as other CYS failures, such as their failure to facilitate video calls between Mother and Father and Children. They further maintained CYS relied on old information regarding the conditions of their home and that the court erred in finding they evidenced a settled purpose to relinquish their parental rights.

When reviewing orders terminating parental rights, we must "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa.

2012). Where "the factual findings are supported," we review the decision "to determine if the trial court made an error of law or abused its discretion." *Id.* We will reverse a decision "for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.*

The Pennsylvania Supreme Court has explained the reason for applying an abuse of discretion standard to termination decisions:

> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*Id.* at 826-27 (citations omitted).

A trial court may terminate parental rights only after finding grounds for termination existed under Section 2511(a) and that termination is in the child's best interest under Section 2511(b). Although the trial court terminated Mother's parental rights pursuant to several subsections of Section 2511(a), we need only conclude that its decision was proper under any one subsection of Section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we conclude that the trial court properly terminated Mother's parental rights pursuant to Section 2511(a)(1).

Section 2511(a)(1) provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1). Further, with respect to section 2511(a)(1), "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b).

"Although it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." **In re B., N.M.**, 856 A.2d 847, 855 (Pa.Super. 2004). Further:

> Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life'.

*Id.* (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super.2003). Parental duty requires that a parent "act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (quoting *In re Adoption of Dale A., II*, 683 A.2d 297, 302 (Pa.Super. 1996)). A parent is required to "utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *Id.*

Here, the trial court found Mother and Father "evidenced a settled purpose of relinquishing parental claim to [Children] and have refused and failed to perform parental duties." N.T., 4/1/18, at 117-18. In its 1925(a) opinion, the trial court clarified that "it cannot be any clearer that Mother and Father's conduct evidenced a failure to perform parental duties for at least six months, more specifically for at least 18 months before the petition was filed." TCO at 7. It found

> From at least August 2016 through the time of the hearing, Mother and Father have not seen the children at all. Mother has made regular telephone calls, but that is not parenting in the least. Mother and Father left Pennsylvania in the summer of 2016, to avoid the requirements and help that [CYS] was providing them and their children. They have not returned. They did not attend the hearing except by phone. There is no indication they are going to return to Pennsylvania.

TCO at 7-8. The trial court noted that there was "some indication" that Mother and Father were waiting until their financial situation improved before they saw Children, but noted that "[p]arental rights may not be preserved by waiting for some more suitable financial circumstances or convenient time for the performance of parental duties and responsibilities," and that parents must act "affirmatively, with good faith interest and effort." ***Id.*** at 8 (quoting ***In the Interest of C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000)). The court concluded:

> Mother and Father, without good reason, voluntarily left their children in foster care in Pennsylvania to be raised by other adults. In the meantime, the minor children have been growing and maturing. Their development through childhood and adolescence into adulthood cannot wait for Mother and Father to be ready to provide care. The minor children need[] proper guidance and nurturing now. Both Mother and Father have many relatives and connections in the Berwick area. Their lengthy relocation many miles away to Arkansas without their children is inexcusable.

TCO at 8-9. The record supports the trial court's factual findings and it did not abuse its discretion in finding CYS established by clear and convincing evidence that termination was proper under Section 2511(a)(1), including that, during the relevant six month period, Mother and Father failed to perform parental duties.

Further, Section 2511(a)(1) requires a finding that the parent either evidenced a settled purpose to relinquish their parental claim or a failure to perform parental duties. At the hearing, the court found parents evidenced

both by moving to Arkansas, without good reason, and not seeing Children. Contrary to Mother and Father's claim, this was not an abuse of discretion.

In addition, the trial court did not err in finding CYS made reasonable efforts in these circumstances. CYS did not immediately place a request under the ICPC, but the trial court did not abuse its discretion in finding CYS acted reasonably where, as here, CYS wanted to ensure there was appropriate housing and where, after the request, parents did not comply with the requirements. Mother and Father claim Arkansas did not receive the May 2017 request. However, Ms. Shaylor testified that Arkansas denied the request because Mother and Father failed to complete the home study paperwork, and the trial court credited this testimony. N.T., 4/18/18, at 28, 31. Further, although Ms. Shaylor testified that a person need not have their own home before an ICPC request is made, she also testified that if the housing was not adequate, the request would be denied. **Id.** at 53.

We further note that the Pennsylvania Supreme Court has held that "while reasonable efforts should be considered and indeed, in the appropriate case, a trial court could insist upon their provision," a trial court may grant a petition to terminate parental rights even if an agency failed to provide reasonable efforts. **In re D.C.D.**, 105 A.3d 662, 675 (Pa. 2014). Here, even if CYS did not engage in reasonable efforts, any such failure did not impact Mother and Father's failure to perform parental duties, as the failure resulted from their relocation and refusal to return, and was not due to any perceived lack of reasonable efforts by CYS.

Mother and Father also argue that Ms. Shaylor relied on old information to support the termination petition. Although the information relied on by Ms. Shaylor regarding the conditions of the home were from prior to the move to Arkansas, this was because Mother and Father moved and failed to take reasonable steps to comply with the ICPC process. Therefore, because Mother and Father delayed the process, CYS did not have information regarding their Arkansas home.

Mother and Father also argue the trial court erred in finding Ms. Shaylor credible because she was not appointed to the case until after Mother and Father moved to Arkansas, and because her testimony was inconsistent regarding whether she had previously completed an Interstate Compact request. However, "the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact." *In re Z.P.*, 994 A.2d 1108, 1115-16 (Pa.Super. 2010) (quoting *In re Adoption of A.C.H.,* 803 A.2d 224, 228 (Pa.Super. 2002)). When supported by the record, as they are here, we must accept the credibility determinations of the trial court. *In re Adoption of S.P.*, 47 A.3d at 826.

To the extent Mother and Father also challenge the trial court's findings under Section 2511(b), *see* Appellant Br. at 12, we find that the trial court did not abuse its discretion in finding termination proper under Section 2511(b).

Section 2511(b) provides:

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.

23 Pa.C.S.A. § 2511(b). The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa.Super. 2008) (*en banc*). Pursuant to Section 2511(b), the trial court must determine "whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1286 (Pa.Super. 2005). This Court has explained that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into [the] needs and welfare of the child." *Id.* at 1287.

Here, the trial court found that termination of Mother's and Father's parental rights would best serve Children's developmental, physical, and emotional needs and welfare. N.T., 4/2/18, at 118-19. It noted that Children have not seen Mother and Father in two years, and stated Children did not know Mother and Father. *Id.* at 119. It also noted that Children were doing well, lived with foster parents who hoped to adopt Children, and Children were "healthy, happy, and maturing age appropriately." TCO at 4. We conclude its factual findings are supported by the record, including Ms. Shaylor's testimony that Children were doing well with foster parents. The trial court did not abuse its discretion in finding termination would best serve Children's developmental, physical, and emotional needs.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/07/2018